IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| AGRIPROCESSORS, INC., ) | |
| ) | |
|     Debtor. ) | Bankruptcy No. 08-02751 |
| ---------------------------------------------- | |
| JOSEPH E. SARACHEK, in his capacity as ) | |
| CHAPTER 7 TRUSTEE, ) | Adversary No. 10-09058 |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ARI CHITRIK, ) | |
| ) | |
|     Defendant. ) | |

## ORDER RE: COMPLAINT TO RECOVER PREFERENCE

This matter came before the Court for trial on May 9, 2011. Desiree Withers represented Plaintiff/Trustee Joseph E. Sarachek. Defendant Ari Chitrik represented himself. After presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### STATEMENT OF THE CASE

Trustee seeks to avoid a transfer of $100,000 from Debtor to Chitrik as a preference under § 547(b). Chitrik asserts the payment is not a preference because Debtor merely returned his money, and he was not a creditor at the time he received the payment. Alternatively, Mr. Chitrik argues the payment was intended as a contemporaneous exchange for new value to the Debtor under § 547(c)(1). Trustee

argues that at the time of the transfer, the money was the Debtor's property and Chitrik was a creditor. Trustee denies that the payment was intended as a contemporaneous exchange.

## FINDINGS OF FACT AND PARTIES' ARGUMENTS

Ari Chitrik is a real estate developer in the tri-state area surrounding New York City. Debtor Agriprocessors, Inc. processed kosher meat under strict Orthodox rabbinical supervision. Over the previous two years, Chitrik had informally communicated with Debtor's owners regarding his desire to partner with them in the kosher meat processing business. Chitrik saw an opportunity for Debtor to increase revenues by marketing its kosher meat to a broader audience under a lower level of rabbinical supervision. Chitrik also saw this as a chance for him to get into the kosher food business with a going concern.

On May 12, 2008, the U.S. Immigration and Customs Enforcement executed a criminal worksite enforcement operation at Debtor's Postville, Iowa facility. The immigration raid resulted in the arrest of 389 people, and disrupted Debtor's business. In the wake of the raid, Chitrik saw an opportunity to again push his idea to partner with Debtor and execute his marketing plan. He also believed he could help revive Debtor's business.

2

On September 25, 2008, Chitrik wired $100,000 to Debtor's general account. He did this without any solicitation or approval from Debtor. He says he did it to show Debtor a sign of his serious commitment to doing business with it. Chitrik was aware that Debtor was experiencing financial difficulty because of the raid. He was unaware of the extent of Debtor's problems. In response to the wire transfer, Debtor made a cursory inquiry about rabbinical approval to sell certain meat products to Chitrik. Debtor was unable to secure this rabbinical approval. Debtor then mailed a check to Chitrik refunding the $100,000. Debtor dated the check October 3, 2008. Chitrik presented it for payment on October 10, 2008. On November 4, 2008 Debtor filed for bankruptcy.

Trustee sought to avoid the $100,000 transfer from Debtor to Chitrik as a preference under § 547(b). Chitrik argues Debtor merely returned his money. As such, he claims the check was not a transfer of an "interest of the debtor in property" under § 547(b). Chitrik similarly denies that he was a creditor of Debtor under § 547(b)(1) at the time he received the $100,000 transfer. Alternatively, Chitrik argues that Debtor's transfer was part of a transaction intended as a contemporaneous exchange for new value under § 547(c)(1).

Trial was set for Monday, May 9, 2011. On Friday, May 6, 2011, Chitrik contacted the Court regarding his desire to call a witness that he had not previously

listed in his Pretrial Statement. Trustee objected. That afternoon, the Court conducted a telephonic hearing with the parties regarding the witness's participation. Chitrik made clear he did not want the trial continued as he had a non-refundable airplane ticket. The Court agreed to delay the start of the trial on Monday, May 9, for a few hours so Trustee could depose Chitrik's new witness.

Trustee's counsel arranged for a court reporter and spent time over the weekend preparing to depose Chitrik's witness. On Monday morning, the witness did not appear at the arranged time for the deposition. Chitrik informed the Court that the witness had been instructed by his own counsel not to appear. Trustee requests compensation for attorney fees and court reporter costs incurred in preparation for the deposition.

## CONCLUSIONS OF LAW AND DISCUSSION

"Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Barnhill v. Johnson, 503 U.S. 393, 394 (1992). "This rule is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy." Wells Fargo Home

Mortgage, Inc. v. Lindquist, 592 F.3d 838, 842 (8th. Cir. 2010) (quoting Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 326 (8th Cir. 1997)).

Under § 547(b), Trustee must prove six elements to avoid a transfer as a preference:

> (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case (or one year for insiders), (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor had asserted its claim in a Chapter 7 liquidation.

In re Carney, 396 B.R. 22, 24 (Bankr. N.D. Iowa 2008) (citing In re Interior Wood Prods. Co., 986 F.2d 228, 230 (8th Cir. 1993)); 11 U.S.C. § 547(b). The trustee has the burden to establish these elements by a preponderance of the evidence. Wells Fargo Home Mortgage, 592 F.3d at 842; 11 U.S.C. § 547(g). In this case, Chitrik argues Trustee cannot prove his case under § 547(b) because there was not a "transfer of the interest of the debtor in property." Further, Chitrik claims he was not a creditor of the Debtor at the time he received the transfer.

Section 547(c) also contains a list of affirmative defenses that, if proven, prevent a trustee from avoiding a transfer. Chitrik has the burden of proving nonavoidability of a transfer under the § 547(c) exceptions. 11 U.S.C. § 547(g);

5

Carney, 396 B.R. at 24. In addition to his arguments against two of the § 547(b) elements, Chitrik alternatively argues that the transfer was part of a contemporaneous exchange for new value under § 547(c)(1). The Court will consider these issues separately.

1. **Section 547(b) Issues**

Trustee has the burden of proving his case under § 547(b) before defenses under § 547(c) are relevant. The Court thus first addresses Chitrik's arguments that Trustee failed to make a case under § 547(b).

   a. **Whether Debtor Transferred an "Interest of the Debtor in Property"**

A threshold requirement of § 547(b) is that the property transferred be "an interest of the debtor in property." Id. This requirement "is satisfied . . . if the money transferred . . . was property of Debtor's estate at the time of the transfer." In re Rine & Rine Auctioneers, Inc., 74 F.3d 854, 857 (8th Cir. 1996) (citing Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1279 & n. 8 (8th Cir. 1988) ("Bellanca I")). "The fundamental inquiry is whether the transfer diminished or depleted the debtor's estate." 5 Lawrence P. King et al., Collier on Bankruptcy ¶ 547.03[2], at 547-20 (16th ed. 2010).

Courts look to state law to determine whether property is an asset of the debtor. Rine & Rine, 74 F.3d at 857. See also Barnhill, 503 U.S. at 398 ("In the

absence of any controlling federal law, "property" and "interests in property" are "creatures of state law."). "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve [the extent to which that interest is property of the estate]." Rine & Rine, 74 F.3d at 857–58.

In this case, Debtor owned the bank account to which Chitrik wired $100,000. It is undisputed that Debtor exercised ownership, dominion, and control over its bank account. See Shaw v. Addison, 28 N.W.2d 816, 833 (Iowa 1947) (named bank account owner is its prima facie owner). Where a debtor has complete legal title to a general bank account, possesses all indicia of ownership, and has unfettered discretion to pay creditors of its own choosing, courts are in agreement that the funds in that account are "an interest of the debtor in property." See, e.g., Matter of Southmark Corp., 49 F.3d 1111, 1116 (5th Cir. 1995); In re Laser Realty, Inc., slip op. 2011 WL 2292269 at *5 (Bankr. D. P.R. June 8, 2011). When funds are placed as "deposits in a bank to the credit of a debtor [they] become property of the estate." Bellanca I, 850 F.2d at 1275; (citation omitted); see also Collier, ¶541.08 (same).

In Rine, the debtor auctioned the creditor's collateral in order to satisfy one of the creditor's loans. 74 F.3d at 856. After the auction took place, the debtor deposited the proceeds into its general bank account. Id. Debtor kept a portion for his sale expenses, but drew a check from his general account to satisfy the creditor's

7

loan. Id. The debtor filed for bankruptcy less than ninety days later and the court found this transfer could be avoided as a preference. Id. at 857. The creditor then appealed claiming that the property transferred was not property of the debtor. Id. On appeal, the Eighth Circuit stated when the funds were placed in the debtor's general account, they became commingled and thus indistinguishable and untraceable. Id. at 858. The court reasoned that without any indicia of ownership in the debtor's account, the creditor lost his control over the funds, and thus when the debtor commingled the funds in the contents of his general account, all money in the account was subject to claims from any of the debtor's creditors. Id. at 859. The court held that "any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and transfers that diminish that property are subject to avoidance." Rine & Rine, 74 F.3d at 861–62 (quoting In re Bellanca Aircraft Corp., 96 B.R. 913, 915 (Bankr. D. Minn. 1989) ("Bellanca II")). Because Debtor owned the account and the funds in it, the Court finds Trustee has shown a transfer of "an interest of the debtor in property" that is subject to avoidance under § 547(b).

### b.  Whether Chitrik was a Creditor of Debtor

Chitrik called Debtor's office, and Debtor provided Chitrik with its account information. Chitrik then unilaterally wired $100,000 to Debtor to show Debtor he

was serious about developing a business relationship to market kosher meat. As discussed above, when the $100,000 was deposited into Debtor's account and was commingled with Debtor's other funds, the money became Debtor's property.

Chitrik has characterized this payment as a conditional deposit. He asserts that if Debtor obtained permission to market kosher meat under a lower level of rabbinical supervision, and if the parties could agree to other specific terms such as the price and supply of meat, then Chitrik's $100,000 payment would be a credit on its account with Debtor. The money then would serve as a down payment on the first shipment of meat from Debtor to Chitrik. Based on the evidence before it, the Court concludes that even though Chitrik unilaterally sent Debtor the money and a finalized deal was in the distant future, Chitrik's wire of $100,000 to Debtor created a debtor-creditor relationship sufficient for § 547(b) purposes.

The Bankruptcy Code defines "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "Claim," in turn, is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). As the Eighth Circuit stated in In re Armstrong, "[t]he test for when a debt is incurred is whether the debtor is legally obligated to

9

pay." 291 F.3d 517, 525 (8th Cir. 2002) (quoting Laws v. United Missouri Bank of Kansas City, N.A., 98 F.3d 1047, 1051 (8th Cir. 1996)).

In this case, the Court concludes a debt was incurred because either way Chitrik had a claim against Debtor. If Chitrik and Debtor ultimately struck a deal, Debtor would have an obligation to pay in $100,000 of product. If Chitrik and Debtor failed to agree to a deal for marketing kosher meat, Debtor still would have been legally bound to repay Chitrik. "Congress gave the 'broadest possible definition' to the term 'claim' in order to ensure that 'all obligations of the debtor, no matter how *remote* or *contingent*, [would] be dealt with in the bankruptcy case." In re Cybermech, Inc., 13 F.3d 818, 821 (4th Cir. 1994) (citing S.Rep.No. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808 (emphasis added). Chitrik is a sophisticated businessman. He characterized his $100,000 wire to Debtor as a "slap in the face" to get the Debtor's attention about a novel and potentially lucrative business opportunity. The money came with very few strings attached. That was part of Chitrik's strategy. He wanted to win Debtor's trust and develop a mutually beneficial business relationship. Chitrik's wire transfer to Debtor was not a gift. He expected repayment either by a shipment of product from Debtor or a refund.

This case is similar to the facts in In re Cybermech. Id. In that case, the Fourth Circuit held that a debtor's return of a customer's down payment was a preferential transfer. Id., 13 F.3d at 822. In that case, Royal Cake Company entered into a conditional sales agreement with Cybermech to purchase machines. Id. at 819. Royal sent Cybermech a check for a down payment, which Cybermech deposited in its bank account. Id. Approximately three weeks later, Cybermech sent a check for the same amount back to Royal with a letter stating that they could not execute the project as planned. Id. at 819–20. Three weeks after sending the check and letter, Cybermech filed for Chapter 7 bankruptcy. Id. The trustee sued Royal to avoid Cybermech's payment as a preferential transfer. Id.

Royal argued the transfer was not made for the benefit of a "creditor." Id. at 821. On appeal, the Fourth Circuit held that "Royal had a 'claim' against Cybermech . . . when Cybermech received Royal's payment check and deposited it into its own account." Id. The court noted the down payment "gave rise to a duty on the part of Cybermech either to produce [the machines] or to refund the down payment." Id. The court concluded that "Royal's rights against Cybermech, albeit contingent and remote, fell within the Bankruptcy Code's definition of 'claim' and thereby rendered Royal a 'creditor' of Cybermech as of [the date Cybermech deposited the down payment check]." Id. (citing In re Gold Coast Seed Co., 751 F.2d 1118, 1119 (9th

11

Cir. 1985)). See also In re Safety-Kleen Corp., 331 B.R. 591 (Bankr. D. Del. 2005) (Trustee could avoid as a preference a payment debtor made within 90 days of filing to refund a duplicate payment that debtor's customer had previously made on the same invoice).

The Court concludes that, as in Cybermech, when Chitrik's wire transfer was deposited into Debtor's bank account, Chitrik had a "claim against the Debtor that arose before the order for relief." § 101(10)(A). As a result, when Chitrik subsequently cashed Debtor's check to repay the $100,000, it was "to or for the benefit of a creditor." § 547(b)(1).

### 2. Section 547(c) Issue—Whether Debtor's Transfer was Part of a Contemporaneous Exchange for New Value

The Court has concluded that Trustee has proved the § 547(b) elements by a preponderance of the evidence. The next question is whether Chitrik can prove his affirmative defense under § 547(c). The purpose of the § 574(c) exceptions is "to encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether." Armstrong, 291 F.3d at 525 (quoting In re Jones Truck Lines, 130 F.3d at 326).

Chitrik argues that Debtor's transfer to him was part of a contemporaneous exchange for new value under § 547(c)(1). Section 547(c)(1) provides:

12

> (c) The trustee may not avoid under this section a transfer--
> > (1) to the extent that such transfer was--
> > > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > > (B) in fact a substantially contemporaneous exchange;

Id. Here, Chitrik must prove by a preponderance of the evidence that: (1) Agriprocessors and Chitrik both intended Chitrik's wire transfer of $100,000 and Agriprocessors' repayment by check as a contemporaneous exchange; (2) the exchange was in fact substantially contemporaneous; and (3) the exchange was for new value. See, e.g., Velde v. Kirsch, 543 F.3d 469, 472 (8th Cir. 2008); Armstrong, 291 F.3d at 525; Silverman Consulting, Inc. v. Canfor Wood Products Marketing (In re Payless Cashways, Inc.), 306 B.R. 243, 249 (B.A.P. 8th Cir. 2004). "In simplest terms, a defendant makes its case under [§ 547(c)(1)] by proving that the debtor received new value in exchange for the payment in question, and that both debtor and creditor intended such an exchange." Payless Cashways, 306 B.R. at 249 (citing In re Nation–Wide Exchange Services, Inc., 291 B.R. 131, 149–50 (Bankr. D. Minn. 2003)).

> The purpose of the contemporaneous exchange for new value defense is to encourage creditors to continue to deal with financially-distressed debtors, as long as their

13

>  transactions involve true exchanges of equally-valued consideration.

Payless Cashways, 306 B.R. at 249 (citations omitted).

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended an exchange." Armstrong, 291 F.3d at 525 (citing Official Plan Comm. v. Expeditors Int'l of Washington, Inc. (In re Gateway Pac. Corp.), 153 F.3d 915, 918 (8th Cir. 1998). "The existence of contemporaneous intent is a question of fact." Gateway Pacific, 153 F.3d at 918; Payless Cashways, 306 B.R. at 248. Chitrik's wire transfer to Debtor was very speculative in nature. At the time he transferred the money, he did not know if Debtor would immediately turn him down or if he was in for a long process of obtaining rabbinical supervision. Debtor was not expecting the transfer, and was shocked to receive it. Upon receipt, Debtor made a cursory investigation of a plan to market kosher meat under a lower level of rabbinical supervision. Debtor was not granted the necessary permission and it refunded Chitrik's money by mailing him a check.

Based on this evidence, the Court concludes that, at a minimum, the parties did not have a mutually intended exchange. Debtor was surprised to receive the wire transfer from Chitrik. The parties had not made mutual promises to one another. Cf. Payless Cashways, 306 B.R. at 256. Debtor's lack of knowledge regarding Chitrik's

14

immediate plans shows the absence of Debtor's intent to create a contemporaneous exchange. Gateway Pacific, 153 F.3d at 918. Further, Chitrik's intent cannot be characterized as seeking a contemporaneous exchange. If Debtor could not obtain permission to market kosher meat under a lower level of rabbinical supervision, Chitrik expected that his $100,000 would be immediately returned to him. But if Debtor did obtain the requisite permission, Chitrik expected that his deposit would have remained in Debtor's account for an extended period of time while Debtor arranged for the proper rabbinical supervision and while the parties agreed to terms. Chitrik hoped that his initial wire transfer would materialize into a credit transaction whereby the money he sent would serve as credit for an eventual shipment of kosher meat to him. Cf. Payless Cashways, 306 B.R. at 253 (Parties did not contemplate a credit transaction, and intended for delivery of lumber to be contemporaneous with payment). Thus, Chitrik's conditional deposit was the functional equivalent of a promissory note. Because neither Debtor nor Chitrik intended for a contemporaneous exchange to occur, the Court concludes that Debtor's transfer in the form of a $100,000 check to Chitrik was not a part of a contemporaneous exchange for new value under § 547(c)(1).

### 3. Sanctions Issues

At the start of trial, Trustee's counsel requested an order granting attorney fees and costs which the trial team incurred in preparing for a Court-ordered deposition. As discussed above, Chitrik contacted the Court on the Friday before Monday's trial regarding a witness that he wished to present. Chitrik had not previously included the witness in his Pretrial Statement or otherwise told to the Trustee about the witness. The Court ordered a deposition on short notice after a brief telephonic hearing with the parties on the Friday before Monday's trial. The deposition was scheduled for Monday morning. Chitrik's witness failed to attend.

The Court may award sanctions, including attorney fees and costs, for a party's failure to appear for a deposition. Fed. R. Civ. P. 37(d)(1)(A)(i), incorporated by Fed R. Bankr. P. 7037. "The decision to award sanctions pursuant to Fed.R.Civ.P. 37(d), and the type of sanctions to be awarded . . . [are] within the court's discretion." Criterion 508 Solutions, Inc. v. Lockheed Martin Services, Inc. 255 F.R.D. 489, 495 (S.D. Iowa 2008). The Court looks to the hardship experienced by the moving party that was caused by the failure to appear. While not required to do so, the Court may take into account a party's *pro se* status in determining an appropriate award of sanctions. In re Sabala, 334 B.R. 638, 641 (B.A.P. 8th Cir. 2005).

While Trustee's counsel spent valuable trial preparation time over the weekend to prepare for the deposition on short notice, the Court does not find sufficient hardship caused by the situation. The Court also finds that Chitrik's *pro se* status weighs against sanctions here. The Court finds that Trustee is not entitled to sanctions.

**WHEREFORE,** Trustee's Complaint to Recover Preference is GRANTED;

**FURTHER,** Trustee's Motion for Attorney Fees and Costs for preparing to depose Defendant's witness is DENIED;

Dated and entered: July 22, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE